UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MRUDANGI SHASHIKANT THAKUR,

Plaintiff,

-against-

TOWN OF YORKTOWN, DOMENICO DINOTTE, in his individual and official capacity, THOMAS MURPHY, in his individual and official capacity, RYAN NOONE, in his individual and official capacity, MICHAEL VUOSO, in his individual and official capacity,

Defendants.

26-CV-829 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Dr. Mrudangi Shashikant Thakur was arrested and prosecuted for eavesdropping after two former employees complained that she had placed disguised cameras in their office that could overhear their conversations. After the criminal charge was dropped, the instant litigation followed. Plaintiff asserts state law false arrest, false imprisonment, and malicious prosecution claims against five Yorktown police officers, and asserts a theory of *Monell* liability against Yorktown. All Defendants have jointly moved to dismiss this action. Because Plaintiff has failed to allege beyond conclusory allegations supporting *Monell* liability, the Court dismisses this claim against Yorktown. To the extent Plaintiff asserts federal constitutional claims, they also fail as a matter of law. And, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. As such, Defendants' motion is GRANTED in full.

## BACKGROUND

The following facts are taken from the Complaint and are presumed to be true for the purposes of deciding this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Mrudangi Shashikant Thakur is a doctor in Westchester County, New York. ECF No. 1 ("Compl.") ¶ 8. She operated a plastic and reconstructive surgery practice in Jefferson Valley. *Id.* ¶ 23. In March 2025, two former employees reported to the Yorktown Police Department that they believed Dr. Thakur had placed a camera disguised as a smoke detector in an office that one of the employees used. *Id.* They told Officer Domenico Dinotte that they believed that the camera could record both video and audio based on behavior by Dr. Thakur that indicated she had heard conversations to which she was not party. *Id.* They both complained that neither had given consent to be recorded. *Id.*

Officer Dinotte then reached out to Dr. Thakur. Compl. ¶ 24. Dr. Thakur explained that she does have cameras located throughout her practice, but not in "bathrooms, examination rooms[,] or in any other setting where someone would expect privacy." *Id.* She invited the police to come to her office to ensure that cameras were not improperly located. *Id.*

Instead, Officer Dinotte contacted the former employees and informed them that Dr. Thakur's alleged conduct rose to the level of criminal eavesdropping under New York state law, and that they would need to complete supporting depositions in order to pursue charges against Dr. Thakur. Compl. ¶ 25. Officer Dinotte and Detective Ryan Noone took the depositions. *Id.* ¶¶ 26–27. On March 30 at 4:40 p.m., "under the supervision" of Sergeant Michael Vuoso, Officer Dinotte arrested Dr. Thakur. *Id.* ¶ 29. Sergeant Vuoso fingerprinted and photographed Dr. Thakur, and she was then incarcerated until 6:00 p.m. the same day. *Id.* ¶¶ 30–31.

Officer Dinotte drafted and filed a criminal complaint for the Class E felony of eavesdropping. Compl. ¶¶ 32–33. The Westchester County District Attorney declined to prosecute, and the Yorktown Justice Court dismissed the charges. *Id.* ¶ 35.

On January 30, 2026, Dr. Thakur filed the Complaint initiating this case. Compl. She sued the Town of Yorktown, Officer Dinotte, Sergeant Thomas Murphy, Detective Noone, and Sergeant Vuoso. *Id.* ¶¶ 9–15. She asserts four claims for relief: false imprisonment (under New York state law); false arrest (under New York state law); malicious prosecution (under New York state law); and "violation of rights secured by 42 U.S.C. § 1983, United States Constitution and by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution." *Id.* ¶¶ 37–69. She seeks compensatory damages, punitive damages, and costs and fees. *Id.* at 12–13. On May 4, Defendants moved to dismiss all claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 22 ("Motion"). On June 3, Dr. Thakur responded in opposition to the Motion to Dismiss. ECF No. 25 ("Resp."). On June 10, Defendants replied in support of their Motion. ECF No. 27 ("Reply"). The Motion is therefore fully briefed and ripe for decision.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

This discussion proceeds in three parts. First, the Court analyzes *Monell* liability against the Town of Yorktown based on the allegations in the Complaint. Second, the Court analyzes the federal constitutional tort claims against the individual Defendants. Third, because Plaintiff's claims against both the municipal and individual Defendants must fail, the Court declines to exercise supplemental jurisdiction over the state law claims that remain. And lastly, although not raised by Plaintiff, the Court *sua sponte* grants leave to amend.

### I. Plaintiff's Conclusory Allegations Are Insufficient to State a Claim for *Monell* Liability Against the Town of Yorktown

Beginning with Plaintiff's claim against the Town of Yorktown, it does not survive Rule 12(b)(6) scrutiny. A claim for municipal liability under Section 1983 requires a plaintiff to "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) [A] formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by

> policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Moreover, a plaintiff must establish a causal link between the municipality's policy, custom or practice and the alleged constitutional injury. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue.").

Plaintiff alleges in the Complaint that "Yorktown failed to train, supervise, and discipline police officers" and that the "deficiency in training, supervision, and discipling of the individual defendant police officers was an actual and proximate cause of the constitutional deprivations and injuries suffered by Plaintiff." Compl. ¶¶ 65–67. However, Plaintiff's"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. She fails to allege any facts as to how the training, supervision or discipline was deficient and fails to allege a single fact as to how any such deficiency led to the alleged misconduct in this case. She also does not point to a formal policy of Yorktown, an action by a policymaker, or a widespread practice that led to any of the conduct at issue here. Plaintiff's claim against the Town of Yorktown falls far short of properly alleging *Monell* liability and is therefore dismissed.

## II. Plaintiff Does Not Sufficiently Allege Constitutional Violations by Individual Defendants

In analyzing Plaintiff's claims against the individual Defendants, the Court first explains why it construes Plaintiff's Complaint to allege federal constitutional claims against the individual Defendants. Then, the Court dismisses both the false arrest and malicious prosecution claims against the individual Defendants because Plaintiff has failed to allege a lack of probable cause.

### A. The Court Construes the Complaint to Include Federal Constitutional Claims Against Individual Defendants

At the outset, it is not immediately apparent from the face of Dr. Thakur's Complaint what, if any, federal claim is pled against the individual Defendants. Of the four claims for relief, two expressly invoke New York state law. Compl. ¶ 38 ("Substantively, this claim is founded in New York common law of false imprisonment."); ¶ 45 ("Substantively, this claim is founded in New York common law of false arrest."). Dr. Thakur's claim of malicious prosecution has a more murky provenance, but in her response to the Motion to Dismiss, she clarifies that this claim too is based on New York law, citing New York state court decisions almost exclusively and relying on now-abrogated circuit precedent holding that malicious prosecution plaintiffs must rely on state law. Resp. at 15–17 (citing *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). That leaves only Dr. Thakur's fourth claim as the one that expressly pleads a deprivation of her right under the federal Constitution to be free from malicious prosecution and false arrest. Compl. ¶¶ 60–61.

Defendants appear to treat this claim as one exclusively against the Town of Yorktown, and therefore argue that Dr. Thakur has pled no federal claims against the individual Defendants. Reply at 3 ("Plaintiff did not plead a specific § 1983 claim for relief against any Individual Defendant—she attempted, rather, to allege three state tort claims and shoehorn them into a

*Monell* claim." (emphasis omitted)). While there is merit to this argument, Dr. Thakur does expressly refer to her federal right to be free from malicious prosecution and false arrest. Compl. ¶ 61. Generously construed, then, Dr. Thakur has pled federal malicious prosecution and false arrest claims against the individual Defendants.[1] The Court therefore proceeds to consider the merits of these claims.

**B. All Federal Claims Against the Individual Officers Must Be Dismissed Because the Complaint Alleges the Existence of Probable Cause**

Turning to Plaintiff's claims against the individual Defendants, the Court focuses on her claims against Officer Dinotte, whose conduct forms the crux of Dr. Thakur's Complaint. Plaintiff seeks to hold him liable for claims of false arrest and malicious prosecution. Compl. ¶¶ 44–58. But Plaintiff fails to allege a key element common to both claims: a lack of probable cause.

To plead a claim of false arrest, "a plaintiff must adequately allege '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged.'" *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting *Aponte v. Perez*, 75 F.4th 49, 59–60 (2d Cir. 2023)). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of

[1] To the extent the Complaint could be construed to separately assert a federal false imprisonment claim, that claim fails for the same reason as Plaintiff's false arrest claim as described below. *See Levantino v. Skala*, 56 F. Supp. 3d 191, 199–200 (E.D.N.Y. 2014) (concluding that Section 1983 claims for false arrest and false imprisonment are "substantially the same" and "are synonymous . . . because the elements of the claims are identical.").

reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.

The claim of malicious prosecution attacks a distinct injury. *Id.* at 853. "[A] plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

For both a false arrest and malicious prosecution claim, then, Plaintiff needs to allege a lack of probable cause. But based on the factual allegations in the Complaint, Officer Dinotte had probable cause to believe that Dr. Thakur had committed eavesdropping, a felony under New York state law. N.Y. Penal Law § 250.05. New York defines eavesdropping extremely broadly to cover almost any unauthorized interception or recording of a conversation to which the defendant is not a party. *See* William C. Donnino, Practice Commentary, McKinney's Consolidated Laws of N.Y. Ann.; 1957 N.Y. Op. Att'y Gen. No. 272, 1957 WL 86789, at *1 (Nov. 21, 1957) ("An employer is prohibited by Section 738 from eavesdropping without permission on telephone communication between a suspect employee and an outside person."). Officer Dinotte had two sources of evidence to support his belief that Dr. Thakur had committed eavesdropping: first, the sworn statements of two former employees noting that they had

observed what appeared to be a disguised camera and that they believed the camera had audio recording capabilities because Dr. Thakur would sometimes refer to matters she would not otherwise have known, Compl. ¶¶ 23, 52–53; and second, Dr. Thakur's own admission that she had disguised cameras around the office, *id.* ¶ 24.

Dr. Thakur's admission, beyond merely confirming the presence of disguised cameras in her office, also failed to assure Officer Dinotte that the cameras lacked audio recording capabilities and in fact corroborated her former employees' belief that the cameras had such capabilities. "[B]ecause an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts." *Spinelli v. United States*, 393 U.S. 410, 427 (1969) (White, J., concurring). Here, the former employees were right about one thing—the presence of disguised cameras—so Officer Dinotte was free to credit their rendition of other facts, including Dr. Thakur's behavior indicating that the cameras probably had audio recording capabilities. Even under the "slightly higher" standard of probable cause that applies in the malicious prosecution standard, *Stansbury*, 721 F.3d at 95, Dr. Thakur's own allegations show the existence of probable cause.

Indeed, nowhere in Dr. Thakur's Complaint does she dispute that the cameras had audio recording capabilities. Not until her Response does she allege that the cameras lacked such capabilities, but by then, it is too late. *See* Resp. at 3, 13. "A party opposing a motion to dismiss cannot amend its complaint by making new factual allegations in a memorandum of law opposing that motion or attaching evidentiary matter." *Lesser v. TD Bank, N.A.*, No. 18-CV-9922 (PAE) (GWG), 2020 WL 1943050, at *11 (S.D.N.Y. Apr. 23, 2020). And in any event, it is irrelevant; Dr. Thakur must allege somewhere in her Complaint that *Officer Dinotte* had some degree of knowledge that her cameras lacked audio recording capabilities. She fails to do so.

Instead, Plaintiff appears to take issue with the fact that Officer Dinotte relied on witness statements and Dr. Thakur's admission, without inspecting the cameras upon her invitation. Resp. at 13. "Time and again, however, the Second Circuit has held that probable cause, whether to arrest or prosecute, does not require an officer to undertake any investigation at all." *Tabor v. New York City*, No. 11-CV-195 (FB), 2013 WL 4775608, at *7 (E.D.N.Y. Sept. 6, 2013) (collecting cases). Indeed, Plaintiff's complaint that Officer Dinotte never inspected the cameras in fact supports probable cause because it demonstrates that he never found out the facts that might have otherwise vitiated probable cause. As such, her claims of false arrest and malicious prosecution against Officer Dinotte cannot survive the Motion to Dismiss. And for the same reasons, her claims against the remaining individual Defendants, all of which revolve around Officer Dinotte's conduct, must likewise fail.

## III. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims

As the Court has observed, Plaintiff has pled several parallel state law claims. District courts may decline to exercise supplemental jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7) (cleaned up). Plaintiff offers no basis for concluding that this is not the usual case. The Court

therefore will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

## IV. The Court Grants Leave to Amend

Nowhere did Plaintiff seek leave to amend should her claims fail to survive Defendants' Motion. Nevertheless, the Court considers whether granting leave to amend *sua sponte* would be appropriate and finds that it would be.

Leave to amend is "within the sound discretion of the trial court" and shall be freely granted "when justice so requires." *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); Fed. R. Civ. P. 15(a)(2). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *1 (S.D.N.Y. May 24, 2021) (citation and internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, leave to amend would not necessarily be futile as to the constitutional claims against the individual officers, and there are no other reasons to deny leave to amend. Although Plaintiff fails to allege facts that would plausibly state a lack of probable cause to arrest or prosecute her, she may be able to marshal factual allegations in an amended complaint that Officer Dinotte or other officers lacked "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

that" Plaintiff had committed a crime. *Weyant*, 101 F.3d at 852. The Court grants Plaintiff one last opportunity to do so.

The same cannot be said, however, for Plaintiff's claim against the Town. Plaintiff has not alleged any facts that even approach meeting the standard for *Monell* liability and that claim fails for multiple reasons as stated above. As such, the Court does not grant leave to amend this claim.

## CONCLUSION

The Court therefore GRANTS Defendants' Motion to Dismiss. Count IV of Plaintiff's Complaint is dismissed with prejudice as to the Town of Yorktown, and all other claims are dismissed without prejudice. Plaintiff is GRANTED leave to file an amended complaint no later than **December 4, 2026**, to address the deficiencies the Court has identified in her malicious prosecution and false arrest claims. Extensions of time or further leave to amend are unlikely to be granted absent extraordinary circumstances. If no complaint is filed by that date, the Court will dismiss the federal claims in this action with prejudice and close this case.

The Clerk of Court is respectfully directed to terminate ECF No. 22.

Dated: November 10, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge